IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON LAVANCE STEWART,<br>      Plaintiff,<br>v.<br><br>BERKS COUNTY PRISONS WARDEN GEORGE WAGNER, et al.,<br>      Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:    CIVIL ACTION<br>:    NO. 06-3460 |

Rufe, J.                                                                                                         January 30th, 2012

**MEMORANDUM OPINION**

      Plaintiff Jason L. Stewart brings the instant action against Defendants Berks County Prison ("BCP") Warden George Wagner, the BCP Health Systems Administrator, the BCP Primary Physician, and several BCP nurses, alleging cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and acts in violation of due process and equal protection rights secured by the Fourteenth Amendment, the Fifth Amendment and the Sixth Amendment, pursuant to 42 U.S.C. § 1983. Stewart also alleges negligence, and acts in violation of the due process protections of the Pennsylvania Constitution.[1] Before the Court are Motions to Dismiss filed by BCP Warden George Wagner and BCP Primary Physician Dr. Mary Beth Jackson, and Stewart's response thereto.

      I.      FACTUAL AND PROCEDURAL BACKGROUND

      Stewart's claims arise out of medical treatment he received while incarcerated at Berks County Prison in Pennsylvania. The facts alleged in the Complaint are assumed to be true for the

---

[1] Specifically, Stewart claims that Defendants have violated "Plaintiff's Constitutional Rights under the First Amendment, Article 9 of Pennsylvania's Constitution Governing Due Process . . . [and] Plaintiff's Constitutional [sic] Rights to Equal Protection and Due Process Contained in the 5th, 6th, 8th, and 14th AMENDMENTS OF the United States of America's Constitution . . . ." Compl. at 1. The Court assumes that Stewart intended to plead a violation of Article I, Section 9 of the Pennsylvania Constitution, which governs the rights of the accused in criminal prosecutions, rather than Article IX, which governs the establishment of local and municipal government within the Commonwealth.

purposes of the Motion to Dismiss; additionally, the Court accepts as true all reasonable inferences that may be drawn from the allegations, and views those facts and inferences in the light most favorable to Stewart, the non-moving party.[2]

Stewart alleges that, on or about April 1, 2005, he began to experience flu-like symptoms and painful swelling of his leg. He reported to the Prison medical department, where he was examined by "Nurse Paula" and an unidentified male nurse who gave him medication in the form of a shot and pills, which Stewart believes were either Bactrim or Keflex. Stewart's symptoms abated briefly, but then increased. Stewart alleges that he reported his symptoms to Nurse Paula, and told her he no longer wished to take the medication provided earlier. Nurse Paula refused to send him back to the medical department and threatened him with a misconduct charge if he did not take his pills.

Stewart took the pills as ordered, but his symptoms became even worse—he could not eat or get out of bed, could not stand on his swollen leg, vomited, and had diarrhea. The following day, Stewart was seen by another nurse, and he again requested evaluation by a doctor and different medication. Both requests were denied. Stewart claims he became increasingly ill over the next twelve days.

On or about April 12, 2005, Stewart was transported by sheriffs to the Berks County courthouse for a hearing. Because Stewart vomited and complained of abdominal pain at the courthouse, sheriffs contacted the Prison. Stewart maintains that the sheriffs were told by Nurse Paula that he was "faking" and should not be returned to the Prison before his hearing. After returning from his court appearance, Stewart sought out Nurse Paula to explain that he was not

---

[2] See infra, Part II.

feigning illness, and that he believed the medication she had prescribed was making his symptoms worse, not better. Nurse Paula sent Stewart to the medical department, where he was seen by yet another nurse, who changed his medication, but still refused to allow him to see a doctor. Stewart became much sicker that night.

The following morning, Stewart was jaundiced, vomiting, and unable to eat. He was again sent to the medical department, where he was kept in the infirmary on intravenous fluids. On or about April 14, 2005, Stewart was examined by Dr. Jackson (identified by Stewart as BCP's "Primary Physician"). Dr. Jackson was unable to diagnose Stewart, and transferred him to Reading Hospital. After running a number of tests, Reading Hospital doctors told him that he had a severely swollen and inflamed liver as a result of an allergic reaction to a medication administered by the Prison medical staff, and that he had a "50/50 chance to live." Stewart remained at Reading Hospital for approximately two weeks. On or about April 28, 2005, Stewart was discharged from the Hospital, given documentation of his diagnosis and treatment to provide to the Prison medical department, and returned to BCP.

On his return, Stewart submitted several "Inmate Request" forms in an attempt to determine the names and titles of the nurses, doctors and other medical staff who had treated him. He also filed a grievance with the Prison Warden. Stewart did not receive a response to his requests or complaints.

Approximately two days after his return from Reading Hospital, Stewart's leg again became swollen. He returned to the medical department, where he was treated by Nurse Paula. Nurse Paula gave Stewart a pill to which he had another bad reaction. The following morning, Stewart was again scheduled to appear in court, but on arriving at the courthouse, he began to vomit, "cramp up," and sweat with fever. Sheriffs took him directly to the Hospital, where

3

Stewart was again diagnosed with and treated for further liver damage due to an allergic reaction to medication. Stewart claims that Nurse Paula later admitted that she and other medical staff had mistakenly administered the same medication Stewart received before his first hospital admission. Nurse Paula then denied Stewart's request to see a doctor as unnecessary. Thereafter, Stewart refused all further care or medication from the BCP medical staff.

Stewart commenced this action *pro se* on September 12, 2006, alleging Defendants violated his right to "equal protection under the Amendments . . . against negligence and malice" and right to proper and adequate medical care.[3] Shortly thereafter, Warden Wagner moved to dismiss the Complaint.[4] Upon review of the case file, the Court referred the case to the Prisoner Civil Rights Panel, and ordered all motions stayed pending appointment of counsel. While the case was stayed, Dr. Jackson filed a motion to dismiss. Counsel was appointed on October 21, 2009, and was granted several extensions of time in which to file amended pleadings or respond to any pending motions.[5] By letter to the Court, Stewart's counsel informed the Court that counsel did not intend to amend the original Complaint. Defendants Wagner and Jackson renewed their motions, and Stewart's counsel filed a single response in opposition to the two motions.[6]

---

[3] Doc. No. 5.

[4] Doc. No. 10.

[5] Doc. Nos. 27, 29.

[6] Doc. No. 38. A motion to dismiss was also filed by BCP P.H.S. Administrator Cynthia Shelton, BCP Nurse Paula Dillman, and BCP Nursing Supervisor Marcie Gilmour [Doc. No. 21]. The Court dismissed this motion with leave to renew after the case was removed from suspense [Doc. No. 26]; however, the motion was not renewed, and is not under consideration by the Court at this time.

4

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[7] and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[8] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."[9] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[10]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[11] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[12] it need not accept as true "unsupported conclusions and unwarranted inferences,"[13] or the plaintiff's

---

[7] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1323 (2011).

[8] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (internal quotation omitted). At the motion to dismiss stage, a court does not determine whether the plaintiff will prevail, but only whether he will be permitted to seek evidence in support of the claims in the complaint. See Twombly, 550 U.S. at 556, 558-59.

[9] Twombly, 550 U.S. at 555 (citation omitted).

[10] Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011) (citation omitted).

[11] Phillips, 515 F.3d at 233.

[12] Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010).

[13] Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (quotation omitted).

5

"bald assertions" or "legal conclusions."[14]

### III. DISCUSSION

#### A. Plaintiff's Medical Indifference Claim

Stewart has alleged that Defendants' actions constituted cruel and unusual punishment in violation of the Eighth Amendment, and violations of due process and equal protection rights secured by the Fourteenth, Fifth and Sixth Amendments. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution . . . committed by a person acting under the color of state law."[15] Where, as here, private entities contract with municipalities to provide services to prison inmates, those entities and their employees, act "under color of state law."[16]

In accordance with the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" encompassed by the Eighth Amendment's prohibition against cruel and unusual punishment,[17] the government is obliged "to provide medical care for those whom it is punishing by incarceration."[18] In part, this obligation arises due to a prisoner's inability to access medical care on his or her own,[19] but more importantly, denial of proper medical care may in

---

[14] Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d. Cir. 1997)).

[15] Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).

[16] See West v. Atkins, 487 U.S. 42, 54 (1988) (physician under contract to provide medical services at prison acted under color of state law); see also Morgan-Mapp v. George W. Hill Corr. Facility, No. 07-2949, 2008 WL 4211699, at *15 (E.D. Pa. Sept. 12, 2008) (private companies that contract with prisons act under color of state law for purposes of § 1983).

[17] Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)) (internal citations omitted).

[18] Id. at 103.

[19] See id. at 103-04, 104 n.9.

some instances lead to "pain and suffering which no one suggests would serve any penological purpose."[20]  Therefore, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. . . . [W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care. . . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."[21]

However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."[22]  An inadvertent failure to provide adequate medical care or mere negligence in diagnosing or treating a medical condition does not implicate the Eighth Amendment.  Therefore, "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[23]

In Natale, the Third Circuit articulated the Estelle standard as a two-pronged test, requiring that plaintiff show: "(i) a serious medical need, and (ii) acts or omissions by prison

---

[20] Id.

[21] Id. at 104-05 (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)) (internal punctuation omitted).  It appears from the Complaint that Stewart was a detainee awaiting trial, rather than a convicted prisoner.  The Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the due process rights secured by the Fourteenth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983);  Bell v. Wolfish, 441 U.S. 520, 531 (1979).  However, "[t]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" Natale, 318 F.3d at 581 (quoting City of Revere, 463 U.S. at 244), and the Third Circuit evaluates the medical indifference claims of both pretrial detainees and convicted prisoners according to the standard set forth in Estelle v. Gamble.  See Natale, 318 F.3d at 581.  Therefore, Stewart's status as a pretrial detainee is immaterial to the Court's analysis of his claims.

[22] Estelle, 429 U.S. at 106.

[23] Id.

7

officials that indicate deliberate indifference to that need."[24]  With regard to the first prong, a medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention . . . . The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment."[25]  Stewart has plainly alleged a serious medical need—allergic reaction to a medication leading to acute liver inflamation, resulting in a two-week hospital stay and permanent liver damage—and Defendants do not dispute at this stage that the alleged need was serious.

The "deliberate indifference" that a plaintiff must allege to satisfy the second prong of the Estelle test is a relatively subjective standard of liability, "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other" and often equated with recklessness as that term is defined in criminal law.[26]  In Farmer v. Brennan, the Supreme Court adopted a "subjective" test for deliberate indifference, holding that an individual prison official "cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[27]  In addition, it is well settled that an individual defendant in a

---

[24] Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (evaluating inadequate medical care claims at summary judgment)).

[25] Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted).

[26] Farmer v. Brennan, 511 U.S. 825, 836 (1994); see also Natale, 318 F.3d at 582; Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).

[27] Farmer, 511 U.S. at 837. This standard may be somewhat lower in situations involving pretrial detainees. See Morgan-Mapp, No. 07-2949, 2008 WL 4211699, at *13.

civil rights action "must have personal involvement in the alleged wrongs,"[28] which "can be shown through allegations of personal direction or of actual knowledge [of] and acquiescence" to a subordinate's violation of a plaintiff's constitutional rights.[29]

The Estelle test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients."[30] Consequently, where a prisoner has received some medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment and constitutionalize malpractice claims.[31] Nonetheless, the Third Circuit has delineated a number of situations that demonstrate deliberate indifference: for example, "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury;" where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care;" where short of absolute denial, "necessary medical treatment is delayed for non-medical reasons;" and where "prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates."[32]

At this stage of litigation, Stewart has alleged acts or omissions on the part of Defendants

---

[28] Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See also Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993) (citing Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981)) ("Respondeat superior is, of course, not an acceptable basis for liability under § 1983.").

[29] Rode, 845 F.2d at 1207.

[30] Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

[31] See id.

[32] Lanzaro, 834 F.2d at 346-47 (internal punctuation, alterations, quotations, and citations omitted) (collecting cases). "Systemic deficiencies in staffing which effectively deny inmates access to qualified medical personnel . . . have [also] been held to violate constitutional requirements." Inmates of Allegheny, 612 F.2d at 762-63.

sufficient to state a claim of deliberate indifference in violation of Stewart's constitutional rights. The factual allegations in the Complaint specific to Dr. Jackson and Warden Wagner are limited, but Stewart has alleged that both were aware of Stewart's serious medical condition, aware of his many complaints about delayed, inadequate, or damaging treatment, and aware of the adverse results of that treatment. This is sufficient to permit Stewart to conduct discovery to determine which BCP medical staff members were responsible for prescribing the medication to which he had an allergic reaction, which policies or procedures delayed his examination by a doctor or required the use of the medications at issue, and who formulated or enforced those policies and procedures.

### B. Plaintiff's Other Federal Claims

Stewart has failed to allege any actions on the part of Defendants which might be understood to violate his Sixth Amendment rights to a speedy and public trial by an impartial jury, to be informed of the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, or to have the assistance of counsel for his defense. Accordingly, to the extent that Stewart's claims are alleged to arise under the Sixth Amendment, they are dismissed.

Similarly, Stewart has failed to allege facts in support of his claim that his right to "equal protection" under the Fourteenth Amendment was violated.[33]

---

[33] The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The central purpose of the Equal Protection Clause is the prevention of official conduct discriminating on the basis of race, religion, gender or other impermissible classifications. Prisoners, however, are a not a suspect class for the purpose of equal protection analysis. See Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). As Stewart does not claim discrimination based on membership in a protected class, he must allege arbitrary and intentional discrimination (as a "class of one") in order to state an equal protection claim. See Glenn v. Barua, 252 F. App'x 493, 500 (3d Cir. 2007) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)) ("Specifically, he must state facts showing that '(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.' Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) . . . .").

### C.     Plaintiff's State Law Claims

Stewart has alleged that Defendants violated his due process rights guaranteed by the Pennsylvania State Constitution.  Several courts in this District have dismissed similar claims for money damages against state officials in their individual capacities, reasoning that no private right of action for money damages exists under the Pennsylvania Constitution.[34]  Defendants have moved to dismiss Stewart's claim on this basis.  However, since the Supreme Court of Pennsylvania has not definitively addressed this issue, and any claim for damages will depend on the resolution of Stewart's other claims, the Court will not address the argument at this time.

The Court construes Stewart's state law claims of negligence against the BCP medical staff as professional liability claims.  Regardless of whether Stewart has pled facts sufficient to establish a *prima facie* case under Pennsylvania law, he has failed to file the certificates of merit required by Pennsylvania Rule of Civil Procedure 1042.3 in such an action.[35]  Accordingly, Stewart's state law negligence claims against Dr. Jackson will be dismissed without prejudice.[36]

Finally, the Court holds that Defendant Warden Wagner is immune from Stewart's state-

---

See also Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005).  Because Stewart has not alleged that he was treated differently from any other similarly situated individual, his equal protection claim fails.

[34] See, e.g., Bowers v. City of Philadelphia, No. 06-3229, 2008 WL 5210256, at *8 (E.D. Pa. Dec. 12, 2008) (collecting cases).

[35] Pa. R. Civ. P. 1042.3 requires a plaintiff suing licensed professionals to file as to each of them a certificate of merit within 60 days of the filing of the complaint certifying that (a) a qualified expert has supplied a written statement that there exists a reasonable probability that the defendant's care fell outside acceptable professional standards and that such conduct was a cause of injury; or (b) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard; or (c) expert testimony is unnecessary to prove the claim.  The Third Circuit has held that this statute is a substantive state law that must be applied by federal courts hearing state-law malpractice actions.  Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260-64 (3d Cir. 2011).

[36] The Court will grant Stewart leave to file a motion to reassert his medical malpractice claims, but does not decide at this time whether these claims are barred by the statute of limitations.  See, e.g., Liggon-Redding, 659 F.3d at 264; Hartman v. Low Sec. Corr. Inst. Allenwood, No. 04-0209, 2005 WL 1259950, at *4 (M.D. Pa. May 27, 2005); Velazquez v. UPMC Bedford Mem'l Hosp., 328 F. Supp. 2d 549, 560-61 (W.D. Pa. 2004).

law negligence claims under Pennsylvania's Political Subdivision Tort Claims Act, which provides local agencies and their employees governmental immunity from liability for injury to person or property caused by a negligent act of a local agency or employee, except as otherwise provided.[37]

### IV.     CONCLUSION

For the reasons stated and discussed in detail above, the Motions to Dismiss filed by Defendant Wagner and Defendant Jackson will be granted in part and denied in part.  An appropriate Order follows.

---

[37] 42 Pa.C.S. §§ 8541-8564. The Act provides that liability may be imposed only where: (1) damages would be recoverable under common law or a statute creating a cause of action against one not having an immunity defense; (2) the injury is caused by the negligent acts of the local agency or its employee acting within the scope of its office or duties, excepting therefrom acts of crime, fraud, malice or willful misconduct; *and* (3) the injury occurs as a result of one of eight acts described at 42 Pa.C.S. § 8542(b). See, e.g., Bowers, 2008 WL 5210256, at *7; Dock v. Rush, 432 F. App'x 130, 133 (3d Cir. 2011) (finding county prison warden immune from suit for state law claims for wrongful death, negligence and survivorship). The acts alleged here do not fall within one of the eight enumerated categories, nor does the Court find that Stewart has pled any conduct by the Warden which amounts to actual malice or wilful misconduct.